**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **NRRM, LLC,** | ) | **Case No.: 4:24-cv-00412-SPM** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **ENDURANCE WARRANTY** | ) | |
| **SERVICES, LLC** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff NRRM, LLC d/b/a CarShield ("CarShield"), by and through their undersigned counsel, submits its First Amended Complaint for monetary damages and injunctive relief against Defendant Endurance Warranty Services, LLC ("Endurance").

**INTRODUCTION**

1.      This case arises out of Defendant's unauthorized use and infringement of federally-registered trademarks owned and used by CarShield in violation of both federal and state law, as well as Defendant's false advertising and participation in unlawful pay-to-play schemes for vehicle service contracts.

2.      CarShield's claims for infringement of its federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for false advertising and unfair competition under Section 43(a), 15 U.S.C. § 1125(a), for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims of trademark infringement under the statutory and common laws of the State of Missouri, arise from the Defendant's unauthorized use of CarShield's famous trademarks in connection with the marketing, advertising, promotion,

1

offering for sale, and/or sale of Defendant's vehicle service contracts – improperly referred to by Defendant as "car warranties."

3.      CarShield is the nation's leading seller of vehicle service contracts (VSCs) – protecting over two million vehicles. Consumers around the United States know and recognize CarShield as a reliable provider of VSCs available for purchase online through CarShield's own website, www.carshield.com, as advertised through tens of thousands of advertisements in print, television, and radio advertisements.

4.      Endurance is now CarShield's largest direct competitor. The problem is that one of Endurance's main methods of competition is to purchase, or have others purchase for it, the famous CARSHIELD mark as a keyword on internet search engines so that Endurance's numerous generic sounding ads for "car warranties" or "top auto warranties" appear atop the sponsored search results, all without CarShield's permission.

5.      This underhanded and unlawful conduct is particularly disturbing since Endurance has many times in the past promised it would stop the behavior.

6.      Endurance's keyword bidding practice has resulted in mass initial interest confusion costing CarShield millions of dollars because consumers are likely to believe that one of Endurance's generic ads is actually for the term that it searched, CARSHIELD. In reality, Endurance ensures that consumers who search for CarShield and click on one of Endurance's generic sounding "car warranty" or "top auto warranty" ads or websites can provide important information about their car, zip code or even phone number or email, but they are forced to Endurance products and cannot obtain CarShield products.

7.      One of Endurance's generic sounding ads even leads customers to a website that uses CarShield's shield logo.

8.      All of that would have been enough to justify legal action, but Endurance did not stop there with its unlawful conduct.

9.      Endurance also knowingly participates in multiple deceptive websites that are unlawful pay-to-play schemes where those websites falsely and intentionally advertise "the best warranties" that are supposedly determined by research. In reality, those websites are fronts to provide consumer leads to Endurance. Examples of this include the falsely advertised pay-to-play websites.

10.     The pay-to-play schemes are considered unlawful and deceptive by the FTC and Endurance's participation in these deceptive schemes is also costing CarShield millions of dollars.

11.     But Endurance's bad conduct does not stop there either.

12.     Endurance advertises its vehicle service contracts as "warranties," "auto warranties," and other similar terminology. Indeed, Endurance's name itself is Endurance Warranty Services!

13.     But federal law, several states and numerous state regulators, including the FTC and the State of Missouri, require that a warranty comes from a manufacturer. Endurance products are not warranties, but rather aftermarket VSCs. Endurance's advertising for warranties is literally false and violates the Lanham Act and state laws. Endurance continues to flout the FTC and Missouri's Department of Insurance prohibitions against advertising automobile or car warranties when Endurance is actually selling vehicle service contracts.

14.     CarShield brings this lawsuit to protect the substantial goodwill that it has developed over many years in its well-known brand, trademarks and products and to stop Defendant from continuing its infringing and unlawful conduct.

15.    Defendant's actions are causing well over $1 million in damages, and that number will continue to mount the longer Endurance continues its unlawful practices.

## PARTIES

16.    Plaintiff CarShield is a Missouri limited liability company with its principal place of business in St. Charles County, Missouri, within this judicial district.

17.    Defendant Endurance Warranty Services, LLC is an Illinois limited liability company with its principal place of business in Illinois.

18.    Endurance owns, operates, participates in, and/or uses numerous websites that generate significant revenue as a result of unlawful search engine keyword bidding and false advertising throughout the United States, including in Missouri.

## JURISDICTION

19.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367, because CarShield asserts claims for trademark infringement, unfair competition, dilution and false advertising under the Lanham Act, as well as common law and state statutory infringement claims.

20.    This Court has personal jurisdiction over Endurance because it promotes, and offers for sale VSCs that compete directly with those offered by CarShield in this District using CarShield's trademarks. Additionally, this Court has personal jurisdiction over Endurance pursuant to the Missouri's Long Arm Statute, Mo. Rev. Stat. § 506.500. Specifically, Endurance's acts constitute the commission of tortious actions within the State of Missouri that impact or affect residents of the State of Missouri. Endurance also obtained a license to do business in Missouri.

21.    Venue in the Eastern District of Missouri is proper pursuant to 28 U.S.C. § 1391 because Endurance's misconduct alleged herein occurred within and caused harm in this District.

At all relevant times, Endurance committed tortious acts within this District that impact or affect residents of this District.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

A.     **CarShield's Trademark Rights**

22.     CarShield has served as the nation's leading seller of vehicle service contracts (VSCs) for many years – protecting millions vehicles and drivers. CarShield's vehicle protection specialists help drivers around the country choose the right coverage for them from CarShield's selection of plans for their vehicle.

23.     In connection with its VSCs sold throughout the United States, CarShield utilizes and owns a set of federally-registered trademarks. CarShield's federally registered marks include: (i) its United States federal trademark registration for the standard character mark CARSHIELD® (Reg. No. 5,133,928, issued by the United States Patent and Trademark Office ("USPTO") on January 31, 2017) for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing."; and (ii) its United States federal trademark registration for the standard character mark CARSHIELD.COM® (Reg. No. 5,092,752, issued by the USPTO on November 29, 2016), for the standard character mark CARSHIELD.COM for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing."

24.     CarShield also owns the common law rights to these federally-registered marks in throughout the U.S., including Missouri, in addition to the trademark in the CarShield "shield logo" displayed below:



25.    The trademarks above shall collectively be referred to as the "CarShield Marks" or "Marks",

26.    CarShield has been using the CarShield Marks in commerce to market vehicle service contracts continuously since at least as early as 2016.

27.    Through extensive advertising, marketing, and promotion efforts, CarShield has generated a significant amount of goodwill and consumers recognition in its CarShield Marks. The established and continued success of CarShield's VSCs affiliated with its CarShield Marks can hardly be overstated. As recently as February 2024, CarShield earned recognition as the "Most Trusted Brand" in the United States in the "Extended Auto Warranty (non-manufacturer)" category by Newsweek and BrandSpark.

28.    Indeed, CarShield has significantly invested millions of dollars in marketing, advertising, and promoting its CarShield Marks in connection with the sale of vehicle service contracts to consumers.

29.    The CarShield Marks are prominently displayed on CarShield's website, www.carshield.com, allowing customers to receive quotes for vehicle service contracts.

30.    CarShield is repeatedly recognized by its community and many different organizations both locally and nationally.

31.    CarShield has been featured on thousands of TV and radio stations across the country backed by some of the biggest names in the entertainment and news industries. CarShield partners with well-known celebrities such as Ice-T, Chris Berman, Ric Flair, Vivica Fox, Michael Chandler and Pat Maroon to help promote its brand and products, and CarShield's advertisements have been featured on popular television networks including, without limitation, ABC, ESPN, Lifetime, CNN, Fox News, USA Today, CNBC, and the NFL Network.

32.    CarShield has featured its CarShield Marks in tens of thousands of print, television, and radio advertisements to market its VSCs. CarShield also invests substantial amounts of money for its sponsorship of largely attended events, including sponsoring professional sports teams such as the St. Louis Cardinals, St. Louis Blues, sponsoring its own CarShield vehicle and driver on the NASCAR circuit, and having a CarShield sponsored stadium for minor league baseball.

33.    By virtue of CarShield's extensive, continuous, and exclusive use of the CarShield Marks to advertise, promote, distribute, and sell vehicle service contracts, consumers across the United States recognize the CarShield Marks and CarShield brand as belonging to CarShield, associate the services offered and sold under the CarShield Marks exclusively with CarShield, and recognize and trust CarShield as the source of the vehicle service contracts offered for sale and sold under the CarShield Marks.

34.    CarShield's Marks have earned valuable goodwill from being widely recognized, associated with, and identified by consumers and the trade.

35.    CarShield's Marks are famous, and in fact so famous that they are immediately recognizable to consumers.

**B.    Endurance Knowingly, Intentionally, and Systematically Purchases CARSHIELD and Combinations of CarShield's Marks as Keywords on the Largest Internet Search Engines to Direct Traffic to its Generic Advertisements for Car Warranties.**

36.    Endurance and its affiliates knowingly, intentionally and continuously purchase and bid for the keyword "CARSHIELD", or variations thereof, on the largest and most used internet search engines so that when consumers search for CARSHIELD, Endurance's generic ads for car warranties appear at or near the top in the sponsored ad section of search results.

37.    Specifically, Endurance owns, operates or is affiliated with at least the following generic-sounding "car warranty" websites that it advertises online.

extendedautowarranty.com

topcarwarrantydeals.com

autowarrantyprices.com

carwarrantyprices.com

carwarrantysale.com

goautowarranty.com

trustedcarwarranty.com

carwarrantyestimates.com

38.     Endurance's sponsored advertisements, as described above, only advertise general VSCs, not specific or distinctive VSCs on search engines.

39.     Typical internet ads for these generic-sounding auto or car warranty sites on major internet search engines such as Google, Bing Sponsored Sites, and Yahoo!, include:



GoAutoWarranty
https://goautowarranty.com/auto-warranty/request-a-quote ▾

**#1 Car Repair Protection Plan | Low-Cost Extended Car Warranty**
Ad Protect Your Car & Budget With Our After Market Protection Plans. Get a Custom Offer Today. Trusted Warranty Providers. We Cover All Major Systems & Components. Apply to Learn More. No-Obligation · Online Quote · Exclusive Benefits · Best-in-Service Award

Used Cars    Extended Coverage    Save $300 on Plans



40.     Endurance specifically and intentionally chooses generic-sounding website names with automotive or car warranty titles in order trick, deceive and confuse consumers who are searching for CarShield's products or services, into believing that they can find CarShield's well-known, legitimate and trusted VSC's on those generic sites.

41.     Endurance ensures that these generic-sounding websites do not include any reference to Endurance because Endurance intends to trick consumers into continuing to click through to the website believing that they can obtain CarShield products.  Endurance purposefully does not label or indicate that its generic websites are Endurance websites.   If Endurance made it clear that the generic sites are owned and operated by Endurance, and direct consumers only to Endurance products, Endurance would eliminate its ability to deceive consumers by masquerading as a gateway to and source for CarShield VSCs, when in fact the advertised websites prevent consumers from linking to CarShield's websites and obtaining CarShield VSCs.

42.     Consumers reach those sites by specifically requesting CarShield on internet search engines, and without searching at all for Endurance.

43.     A customer who sees Endurance's and/or its affiliates' advertisements is likely to be misled into clicking on them when searching for CarShield products and services, unaware that they will be taken to websites that sell VSCs sold by Endurance and to websites that either do not offer or do not even make it possible to obtain VSCs sold by CarShield.

44.     An example is provided below.  A consumer who searches for "carshield extended warranty cost" on Google is met with a sponsored ad generically referring to "USA's #1 Car Warranty Company" with the website "autowarrantyprices.com".



45.     While a consumer searching for CarShield naturally believes that the generic-sounding sponsored ad and website are referring to CarShield as "USA's #1 Car Warranty Company", the website is an Endurance owned website that takes the consumer to the following landing page:

46.     Endurance's landing page does not include any indication, label, marking or designation showing that a consumer is on an "Endurance" site, or moving toward receiving an Endurance quote for a VSC and only an Endurance quote for a VSC.  Rather, the landing page includes CarShield's blue shield logo with the generic language "Auto Warranty Prices" to confuse and deceive consumers into believing that they are on a CarShield site given their "CarShield" internet search.  Consumers are also asked to input a vehicle manufacturing year to "get started", at which point they input information thinking they will get a CarShield quote for VSCs, when in fact they will only get an email, text or quote from Endurance.

47.     Endurance's carefully constructed scheme of false and deceptive advertising is trickery at its finest.  Consumers cannot possibly know they are on an Endurance site, and that they are not receiving a quote or information on CarShield, the company they searched for initially in Google or another internet search engine.

48.     Endurance thus uses CarShield's Marks to generate initial interest from consumers in car warranties or VSCs, and then directs those unsuspecting consumers to carefully masked generic websites where consumers are confused and deceived into mistakenly believing they are

11

learning about, providing personal information for, and ultimately obtaining quotes for CarShield VSCs. In reality, those consumers are directed to Endurance VSCs at least initially believing they are CarShield VSCs.

49. Endurance uses CarShield's Marks to falsely advertise that consumers and customers can obtain CarShield VSCs through those generic websites, and to create the false impression that those generic websites are affiliated with, sponsored by or feature CarShield. None of that is true, and it all misleads and deceives customers into believing they can obtain CarShield VSCs, when in reality they cannot. It is impossible for consumer to obtain the very thing they were searching for in the first place.

50. In some instances, Endurance buys combinations of "CarShield" as keywords to generate generic sponsored ads claiming customers can get the "No. 1" protection plan or warranty when Endurance knows full well that it is objectively not the leading VSC or car warranty company, and that CarShield is the clear leading seller of VSCs in the country. It's all intended to dupe customers. Endurance's systematic and deliberate use of the CarShield Marks in its fraudulent internet advertising scheme began well after CarShield adopted the CarShield Marks for VSCs and started using the CarShield Marks and CarShield's website www.carshield.com.

51. Endurance's conduct is so bad that they intentionally use a logo that is strikingly and confusingly similar CarShield's trademark protected blue shield logo. CarShield uses its blue shield logo in conjunction with the "CarShield" marks most or all of the time. CarShield's blue shield logo is used in all of CarShield's print, television and visual media advertising, and is featured with the CarShield mark in CarShield's advertising in stadiums, on NASCAR vehicles and clothing. It's also extremely well-known and famous, and associated by consumers as designating CarShield as the origin of VSCs with the blue shield logo. It's everywhere.

52.     Endurance recognizes the value and goodwill CarShield has built up in its blue
shield logo over many years and stole it.  Endurance's shield logo is on the left, CarShield's shield
logo on the right.  Endurance even used the exact same color scheme, with the same darker blue
forming the left part of the shield and a very similar lighter blue forming the right part of the shield.
Endurance likewise copied the checkmark in the middle of the shield.  Endurance's use of the blue
shield log is intended to confuse and deceive consumers into believing, and does confuse and
deceive consumers, that generic sounding ads or promotions like "auto warranty prices" with a
knock-off of CarShield's blue shield logo originate from CarShield.

ENDURANCE:                              CARSHIELD:



53.     Endurance has had actual notice of CarShield's trademark rights in the CarShield
Marks through CarShield's trademark registrations for the Marks.  Endurance even promised to
stop engaging in this type of unlawful advertising, deception and brand misappropriation.

54.     Endurance also had actual notice of CarShield's trademarks rights, given
CarShield's widespread use of its famously CarShield Marks (word marks and blue shield logo)
and CarShield brand.

55.     Despite actual notice of CarShield's trademark rights in its Marks, Endurance has
used and continues to use the CarShield Marks and confusingly similar terms, marks, phrases and
names to advertise both VSCs and auto warranty and VSC providers that compete directly with
CarShield.

56.     Endurance's continuous and systematic practice of buying CarShield-based
keywords and the resulting generic "car warranty" sponsored ads, as well as Endurance's blatant

infringement of CarShield's blue shield logo, are causing significant confusion among consumers, including initial interest confusion and initial source confusion as to the source of VSCs and auto warranties offered on Endurance's web of generic sites, as well as to the availability, quality and/or characteristics of VSCs offered by CarShield.

### C.    Endurance Participates in Multiple Falsely Advertised Pay-to-Play Websites

57.    Endurance also knowingly participates in multiple website platforms that advertise themselves as essentially unbiased ranking and review websites where consumers can supposedly find the top-rated vehicle service companies, but where Endurance knowingly pays the website provider for customer leads. On many or all of these purportedly unbiased ranking and review websites, paying for customer leads is the only way to obtain referrals to consumers who visit the sites.

58.    These websites run ads purporting to be unbiased consumer protection or "top ranked car warranty" websites but they are far from it.

59.    In reality, these deceptive websites are not consumer protection websites or unbiased ranking websites recommending or ranking the best VSCs. They only refer business to the companies which pay them. Endurance is listed as one of the companies which pays these platforms.

60.    These companies not only operate unlawful pay-to-play websites, but many also bid on and purchase the keyword CARSHIELD (or variations thereof) to generate numerous false ads, then send customers not to CarShield as searched for, but rather only to companies that pay to get referred business. Indeed, many or all of these pay-to-play sites make it impossible for the consumer to reach CarShield through the sites, even though the consumer searched for CarShield in the first place.  Endurance even solicits consumers specifically looking for information or a

quote on CarShield VSCs through emails and/or text messages, deceiving the consumers into believing that Endurances activities or products are sponsored by or affiliated with CarShield.  All of this activity occurs with Endurance's knowledge and explicit agreement to participate – making Endurance's business practices of participating in these sites and sending solicitation emails or text messages intentionally deceptive and misleading.

61.     Examples of these pay-to-play platforms that Endurance knowingly participates in and pays for include: extededwarranty.com, gowizard.com, top10.com, comparecarwarranties.com, consumeraffairs.com and others.

62.     The FTC has made it clear that these pay-to-play websites constitute false or deceptive acts:

> Some comparison websites claim to give consumers unbiased, expert reviews of businesses and products. Behind the scenes, though, some of these websites are running pay-to-play operations, offering better ratings, reviews, and placement in exchange for a fee. Don't participate in this kind of deceptive advertising.  *See* FTC Guidance, "Soliciting and Paying for Online Reviews: A Guide for Marketers" (Jan. 2022), available at https://www.ftc.gov/business-guidance/resources/soliciting-paying-online-reviews-guide-marketers.[1]

63.     The FTC's guidance explains how Defendant's participation in pay-to-play websites materially deceives a substantial segment of CarShield's audience – and, indeed, it does.

---

[1] Courts routinely follow FTC Guidelines in determining false advertising under the Lanham Act. *See Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F.Supp.2d 432, 437 (S.D.N.Y. 2001) ("[P]laintiff may and should rely on FTC guidelines as a basis for asserting false advertising under the Lanham Act."); *Millennium Imp. Co. v. Sidney Frank Importing Co.*, No. CIV.03-5141 JRT/FLN, 2004 WL 1447915, at *6 (D. Minn. June 11, 2004) (taking into consideration FTC guidelines in ruling upon a false advertising claim under the Lanham Act); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999) (although it does not carry "authoritative weight," "as the administrative agency charged with preventing unfair trade practices, the [FTC's] assessment of what constitutes deceptive advertising commands deference from the judiciary.").

CarShield has lost millions of dollars in revenue from lost VSC sales because of Endurance's knowing participation in unlawful and deceptive pay-to-play schemes.

64.     Endurance's knowing participation in these websites to confuse customers, mislead the public and syphon customers from CarShield constitutes additional deceptive and false advertising.

**D.     Endurance Falsely Advertise VSCs that Directly Compete with CarShield as "Warranties," "Extended Car Warranties" and Similar Phrases**

65.     Endurance advertises its' VSCs as "auto warranties," "warranties", "extended warranties" and the like, when they are actually vehicle service contracts which directly compete with those of CarShield.

66.     Not only is Endurance's own name "Endurance Warranty Services" misleading, but Endurance now operates or is affiliated with no less than nine websites that advertise Endurance sold VSCs as warranties: extendedautowarranty.com, topcarwarrantydeals.com, autowarrantyprices.com, carwarrantyprices.com, carwarrantysale.com, goautowarranty.com, trustedcarwarranty.com and carwarrantyestimates.com.

67.     Endurance also runs internet ads that regularly advertise its VSCs as warranties.

68.     However, Endurance knows it can't use the word warranty because it tries to disclaim its unlawful advertising on its website by admitting that it sells VSCs and not warranties. So, Endurance advertises auto warranties, but if you click on the ads, Endurance admits that the products they sell are not warranties. This is exactly the type of false auto warranty advertising scam that confuses and deceives consumers, and that led the Federal Government to ban it.

69.     Pursuant to Magnuson-Moss Warranty Act 15 U.S.C. § 2301, Endurance is not an automobile manufacturer or vehicle seller and is thus unable to offer "warranties." Yet, Endurance falsely and illegally purports to offer warranties by using these terms.

16

70.     Use of the term "warranty" to advertise VSCs is literally false.

71.     Several U.S. state laws and regulations, and enforcement actions, including Missouri's, prohibit Endurance's use of these terms.

72.     Endurance's violation of state and federal laws by falsely advertising vehicle service contracts as auto or car warranties, as described above, is causing harm to CarShield.

**E.      Endurance's Conduct is Willful**

73.     Endurance's conduct described was and continues to be knowing and willful, intended to unfairly compete with CarShield and steal CarShield's business.

<u>**COUNT I**</u>
<u>**Violation of Lanham Act § 32, 15 U.S.C. § 1114 – Infringement of Federally Registered Trademarks**</u>

74.     CarShield restates the allegations contained in the preceding paragraphs.

75.     Defendant's continued use of the CarShield Marks in commerce in connection with the offering for sale of VSC products is likely to cause, and has in fact caused, confusion, mistake or deception.

76.     Defendant has and is continuing to reproduce, copy, and colorably imitate the CarShield Marks and apply such reproduction, copy and colorable imitation to products and/or advertisements intended to be used in commerce in connection with the offering for sale of VSCs in a way that is likely to cause confusion, mistake, or to deceive.

77.     Defendant does not have permission to use the CarShield Marks.

78.     Defendant's use of the CarShield Marks is intentional and willful.

79.     Specifically, Defendant has knowingly, willingly, and intentionally used CarShield's Marks on internet search engines including at least Google, Bing, and Yahoo! to advertise its VSCs in connection with generic sounding websites and/or advertisements purporting to sell various "warranties", including "car warranties" and "vehicle warranties", trading on the

substantial goodwill and recognition of CarShield's Marks by consumers in conjunction with VSCs.

80.    Defendant's knowing and intentional use of the CarShield Marks in such keyword advertising does, and was intended to cause confusion, to cause mistake, or to deceive consumers about the source of its competing VSCs. Such conduct is likely to lead consumers to fall victim to (at a minimum) initial interest confusion and initial source confusion – believing that the VSCs advertised by Endurance originate from CarShield and/or are associated with, affiliated with, provided by, and/or are endorsed by CarShield.

81.    Trading on the fame of the CarShield Marks, and CarShield's specific reputation of being the number one trusted brand in its industry category, Defendant knowingly, willfully, and intentionally used the CarShield Marks in keyword advertising to exploit CarShield's reputation, the substantial time, effort and expense invested in building the CarShield brand, and infringe the CarShield Marks.

82.    As a result of the unlawful conduct of Defendant, CarShield has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendant's actions are enjoined by this Court. CarShield has suffered substantial damage to its reputation, goodwill and sales.

83.    CarShield is entitled to, among other relief, injunctive relief and an award of its actual damages (or, in the alternative, statutory damages pursuant to 15 U.S.C. §1117(c)), Defendant's profits, enhanced damages and profits, costs, and attorneys' fees.

84.    CarShield has been damaged and harmed by Defendant's activities in the millions of dollars.

**<u>COUNT II</u>**

**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – False Designation of Origin and False or Misleading Description of Fact as to the CarShield Marks**

85.     CarShield restates the allegations contained in the preceding paragraphs.

86.     Defendant's actions as set forth in this Complaint and Defendant's unlawful use of the CarShield Marks, individually and in combination, violate 15 U.S.C. §1125(a).

87.     Defendant has used and is continuing to use the CarShield Marks without approval and in a manner that is likely to cause confusion – which, at a minimum, is initial interest confusion and/or initial source confusion.

88.     Defendant has used and is continuing to use the CarShield Marks without approval and in a manner that is deceptive as to affiliation, connection, or association of Defendant with CarShield.  Defendant is using CarShield's Marks in keyword advertising that results in generic ads and website promotion that falsely and misleadingly designate those sites as sources of CarShield products, when in fact Defendant's generic websites are not a source of CarShield's VSCs. The competing vehicle service contracts and services that Defendant's offer and advertise compete with CarShield's vehicle service contracts and other services. Defendant has used and is continuing to use the CarShield Marks to advertise and to offer for sale competing VSCs in a manner likely to confuse or deceive individuals by misrepresenting that Defendant's competing VSCs are created, authorized, or approved by CarShield, when they are not.

89.     This unauthorized use by Defendant in commerce of the CarShield Marks as alleged herein constitutes use of a false designation of origin and misleading description and/or representation of fact.

90.     Upon information and belief, Defendant's conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Defendant with CarShield.

91.     As a result of Defendant's conduct, CarShield has incurred losses to its business and to the value of its marks, lost sales, loss of goodwill, and other losses for which CarShield is entitled money damages pursuant to 15 U.S.C. § 1125.

92.     CarShield is entitled to, among other relief, injunctive relief and an award of its actual damages, Defendant's profits, enhanced damages and profits, costs, and attorneys' fees.

**COUNT III**
**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) - False Designation of Origin and False or Misleading Description of Fact as to the CarShield Logo**

93.     CarShield restates the allegations contained in the preceding paragraphs.

94.     Endurance's continued use of multiple infringing shield logos in commerce in connection with the offering for sale of VSC products is likely to cause confusion, mistake or deception.

95.     Defendant has and is continuing to reproduce, copy, and colorably imitate CarShield's proprietary and protected logo and apply such reproduction, copy, and colorable imitation to advertisements intended to be used in commerce in connection with the offering for sale of VSCs in way that is likely to cause confusion, mistake, or deception.

96.     Indeed, Defendant is displaying shields that are the exact same shape and color as CarShield's logo.

97.     Indeed, as shown above, Defendant even displays replicas of CarShield's blue shield logo in conjunction with generic terms such as "Extended Auto Warranty" to confuse and deceive consumers into believing that the source of the "Extended Auto Warranty" is CarShield. This is classic trademark logo infringement.

98.     Defendant does not have permission to use CarShield's trademark protected logo.

20

99.     The actions alleged in this Complaint were committed with knowledge that such imitation does, and was intended do, cause confusion, to cause mistake, or to deceive as to the source and origin of the VSCs being offered.

100.    Defendant's use of CarShield's logo is willful.

101.    As a result of the unlawful conduct of Defendant, including the use of CarShield's logo, CarShield has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendant's actions are enjoined by this Court.

102.    CarShield has been damaged and harmed by the infringement of the logos in an amount to be proven.

**COUNT IV**
**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a)(1)(B) – False**
**Advertising and Unfair Competition**

103.    CarShield restates the allegations contained in the preceding paragraphs.

104.    Defendant's operation of, participation in, sponsorship of and/or use of pay-to-play websites masquerading as unbiased review and ranking sites violates various federal laws and unfairly competes with CarShield.

105.    Defendant knowingly participates in these websites knowing they falsely claim to be unbiased review and rankings sites, and knowing that they only refer consumer and customers to companies that pay them for rankings and referrals.

106.    The so-called unbiased sites refer consumers and customers to companies that pay them and Endurance is their biggest participant.

107.    This is yet another way Defendant knowingly misleads customers into buying VSCs from Endurance.

108.    Defendant's participation and cooperation in these false advertising platforms violates of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) because, by paying to participate in the pay-to-play websites, Defendant is necessarily paying for and approving of the website's content, thereby making and endorsing false statements of fact about its own and other's products. Also, by paying for rankings or placement on these pay-to-play websites, Defendant thus makes and endorses false and deceptive statements about rankings, quality or popularity that are not based in fact or evidence, but rather on the amount of payments. Defendant cannot hide behind making false statements by having others make the statements for them.

109.    Such pay-to-play websites have the tendency to deceive a substantial portion of the audience, and, in fact, meet the definition of deceptive advertising according to the FTC. *See* FTC Guidance, "Soliciting and Paying for Online Reviews: A Guide for Marketers" (Jan. 2022), available at    https://www.ftc.gov/business-guidance/resources/soliciting-paying-online-reviewsguide-marketers.

110.    Such deception is material and Defendant has caused the false statement to enter interstate commerce through its knowing participation in the pay-to-play scheme.

111.    Defendant has been, and is likely to continue to be, unjustly enriched by its deliberate, willing and intentional infringing conduct.

112.    Defendant's wrongful conduct constitutes an "exceptional case" under the Lanham Act.

113.    CarShield has been damaged and harmed by Defendant's activities in the millions of dollars.

## COUNT V
## Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – False Advertising

114.    CarShield restates the allegations contained in the preceding paragraphs.

115.    Defendant's use of phrases such as "auto warranties", "car warranties" and "extended car warranties" on the websites it owns, operates, participates in, and/or uses, including, www.endurancewarranty.com, www.goautowarranty.com, and www.autowarrantyprices.com, just to name a few, misleads consumers into thinking that Defendant markets and/or offers for sale "warranties" for automobiles when the products and services offered by Defendant are not automobile or car warranties.

116.    The use of the terms automobile warranties, car warranties or the like to sell VSC's is prohibited by Federal Law, including the Magnuson-Moss Warranty Act, as well as multiple state laws and regulatory agencies including the Missouri Department of Insurance.

117.    In fact, a non-manufacturer like Endurance cannot even sell a car or automobile warranty.

118.    Defendant knows and understands that the use of the terms automobile warranties, car warranties or the like to sell VSC's is prohibited by law yet continues to market automobile and car warranties knowing Defendant's actions are violating federal and state laws.

119.    Defendant's false, inaccurate, and misleading website advertisements and statements about its own product is literally false and continues to harm the general public by promoting, advertising, and offering for sale a product (car warranty) that is different than the product it actually offers (vehicle service contract).

120.    Not only are Defendant's "warranty" advertisements, promotions and offers for sale literally false, they are also misleading in context and/or likely to deceive consumers because they implicitly convey a false impression of what a consumer is purchasing.  A consumer is not merely purchasing another warranty, or extending a warranty, but rather a consumer is purchasing a vehicle service contract unaffiliated with any manufacturer or manufacturer's warranty.

121.    Such statements actually deceive, or, at a minimum, have the tendency to deceive a substantial portion of the audience, and such deception is material to purchasing decisions of consumers.  Consumers are inundated and confused with advertising for and promotion of car and automobile warranties, and Defendant's false "warranty" advertisements and promotions confuse consumers as to what products are being sold to protect their vehicle.  Defendant's false "warranty" advertisements and promotions likewise create the impression of a scam intended to deceive consumers, and diminish the credibility of Plaintiff and Plaintiff's VSCs that are often compared on a myriad of websites against Defendant's products.

122.    By advertising and/or making these statements on the internet, Defendant has caused the false statements to enter interstate commerce.

123.    Defendant's conduct, as set forth above, constitutes literal false advertising under the Lanham Act, 15 U.S.C. § 1125.

124.    CarShield lacks a complete and adequate remedy at law and, will continue to suffer irreparable harm and injury to its goodwill and reputation if Defendant's activities are not enjoined.

125.    CarShield has been damaged and harmed by Defendant's activities to an extent that will be determined at trial.

## COUNT VI
## Violation of Lanham Act Section 43(c), 15 U.S.C. § 1125(c) – Trademark Dilution

126.    CarShield restates the allegations contained in the preceding paragraphs.

127.    CarShield is the exclusive owner of the CarShield Marks.

128.    As described herein, and consistent with the meaning under Section 43(c) of the Lanham Act, the CarShield Marks are famous and distinctive, and have been for over a  decade – and, in any event, for a time period that significantly predates Defendant's unlawful offerings for sale, selling, and promoting of competing vehicle service contracts using the CarShield Marks.

24

129.    Through long-standing and continued use, substantial investment in product advertising and promotion, and widespread recognition by both consumers and praise by the industry at large, the CarShield Marks have become famous in connection with the sale of VSCs.

130.    Long after the CarShield Marks achieved fame, Defendant began using the CarShield Marks to promote its own VSCs through competitive online marketing in an effort to prey of CarShield's goodwill in its famous Marks, and obtain revenue.

131.    Defendant denigrates and demeans the quality of the products with which the CarShield Marks are associated and harms CarShield's reputation – particularly its reputation as the most trusted brand in its industry category.

132.    Through its use of the CarShield Marks, Defendant is improperly creating a false impression regarding the quality and/or source of the products associated with the CarShield Marks. Such false impression is done without CarShield's authorization and is likely to cause dilution of the strong goodwill that CarShield has built in its CarShield Marks, in violation of 15 U.S.C. §1125(c).

133.    Indeed, Defendant's use in commerce of the CarShield Marks dilutes and/or is likely to dilute the distinctive and unique quality of the CarShield Marks and to significantly reduce both consumers and CarShield's ability to identify and distinguish CarShield's products and services.

134.    Endurance has even been banned by at least one state for its advertising schemes. CarShield has no desire to be associated with Endurance or any of its sponsored or affiliated websites.

135.    Defendant's unlawful use of the CarShield's Marks in connection with inferior products is also likely to weaken and tarnish CarShield's Marks and confuse consumers about the distinctiveness of CarShield's Marks and its exclusive association with CarShield, which would significantly reduce the value of the CarShield's Marks as unique source identifiers of CarShield's products and services.

136.    At all relevant times, Defendant had constructive, actual, and direct knowledge of CarShield's prior use and ownership of the CarShield Marks, and the fame of CarShield's Marks.

137.    Defendant's conduct is willing and intentional, demonstrating Defendant's intent to exploit the goodwill and strong brand recognition associated with the CarShield Marks.

138.    As described above, Defendant intentionally diluted, and may dilute, the distinctive and unique quality of the famous CarShield Marks by knowingly, intentionally, and willfully violating Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

139.    Defendant's wrongful acts will continue unless enjoined by this Court.

140.    Defendant's acts have caused, and will continue to cause, irreparable injury to CarShield.

141.    CarShield lacks a complete and adequate remedy at law and, will continue to suffer irreparable harm and injury to its goodwill and reputation if Defendant's activities are not enjoined.

142.    In addition, CarShield has suffered damages as a result of Defendant's conduct.

### COUNT VII
### Trademark Infringement under Missouri Common Law

143.    CarShield restates the allegations contained in the preceding paragraphs.

144.    Through its actions described above, Defendant's use of the CarShield's Marks in keyword advertising and confusingly similar marks, terms, and phrases is likely to confuse and

mislead consumers into thinking that the competing VSCs advertised on Defendant's websites are associated with, provided by, affiliated with or endorsed by CarShield.

145.    Defendant's use of CarShield's Marks and confusingly similar marks, terms, and phrases infringes CarShield's trademark rights, causing significant damages to CarShield in violation of the common law of the State of Missouri.

146.    Defendant knowingly, willingly, and intentionally misused CarShield's common law Marks and confusingly similar marks, terms, and phrases to:

a.    injure CarShield's business;

b.    trade on its reputation;

c.    pass off competing VSCs as CarShield's VSCs; and/or

d.    confuse and deceive consumers.

147.    Defendant has been and is likely to continue to profit unfairly from its infringing conduct, as described above.

148.    CarShield lacks a complete and adequate remedy at law and, will continue to suffer irreparable harm and injury to its goodwill and reputation if Defendant's activities are not enjoined.

149.    CarShield has been damaged and harmed by Defendant's activities in the millions of dollars.

## COUNT VIII
### Violation of Mo. Rev. Stat. 44 417.061, 417.066
### (State Trademark Infringement)

150.    CarShield restates the allegations contained in the preceding paragraphs.

151.    Through its actions described above, Defendant's unauthorized use of the CarShield Marks and confusingly similar marks, terms, and phrases in keyword advertising and by use of the logos is likely to mislead consumers into believing that the competing VSCs advertised by Endurance are provided by, endorsed by, authorized by, or affiliated with CarShield.

152.    This has harmed and continues to harm CarShield's business, including, without limitation, its reputation and goodwill, and diluted the distinctiveness of the CarShield Marks.

153.    Defendant's use of the CarShield Marks and confusingly similar marks, terms and phrases infringes and dilutes the CarShield Marks, entitling CarShield to injunctive relief pursuant to Mo. Rev. Stat. §§ 417.061 and 417.066..

154.    Defendant's wrongful use of the CarShield Marks and confusingly similar marks, terms and phrases is a deliberate, intentional and willful attempt to injure CarShield's business, to trade on CarShield's business, and/or to confuse and deceive consumers.

155.    CarShield lacks a complete and adequate remedy at law and, will continue to suffer irreparable harm and injury to its goodwill and reputation if Defendant's activities are not enjoined.

156.    CarShield has been damaged and harmed by Defendant's activities in the millions of dollars.

## PRAYER FOR ALL COUNTS

WHEREFORE, CarShield requests that judgment be entered in its favor and that:

A.      This Court award all damages and other monetary relief available as a result of Defendant's infringement and false advertising, such damages and monetary relief including, but not limited to, actual damages, lost profits, Defendant's profits, treble damages, attorneys' fees, and all other monetary relief available under 15 U.S.C. § 1117, other federal and state laws and otherwise;

B.      This Court enter injunctive relief ordering Defendant, and its successors, assigns, affiliates, employees, partners, and anyone acting in concert with them or at its behest or direction, to:

    1)      Cease all use and to never use the trademark CARSHIELD, CARSHEILD, CAR SHEILD and/or CAR SHIELD, and any other trademark, logo, designation, domain name or other source identifier that contains "CAR" and "SHIELD" or is otherwise confusingly similar to the Marks, including misspellings of the same;

    2)      Cease purchasing/bidding and to never purchase/bid "CARSHIELD," "CARSHIELD.COM," and/or "CAR SHIELD" or any other confusingly similar term or phrase as keywords in conjunction with internet advertising of generic websites or falsely advertised websites;

    3)      Refrain from doing any other act or thing likely to induce the belief that any of Endurance's products, services, VSCs, businesses or commercial activities are in any way  connected with or sponsored or approved by CarShield;

29

4)      Terminate and disable any and all internet search engine ad word or similar service or program that uses the Marks or any confusingly similar mark, term or phrase;

5)      Put in as negative keywords in search engines CARSHIELD and similar names;

6)      Remove all metatags for any web site owned, operated or controlled by Endurance, or its affiliates, partners or employees, that incorporate the Marks, or any confusingly similar mark, term or phrase;

7)      Cease using words and phrases that describe or advertise Endurance's VSCs as "warranties";

8)      Cease operating and/or participating in pay-to-play websites.

C.      This Court award CarShield such other and further relief, including costs, as this Court deems just and equitable.

## JURY DEMAND

CarShield hereby demands a jury trial on all issues so triable.

DATED this 15th day of May, 2024.

By:____/s/ *Jeffrey H. Kass*_____
        Jeffrey H. Kass, E.D.Mo# 60672
        1626 Wazee St., Suite 200
        Denver, CO 80202
        Tel: (303) 723-8400
        Fax: (844) 670-6009
        Email: JKass@dickinson-wright.com

        ***Attorneys for Plaintiff NRRM, LLC***

4867-8882-0670 v1 [105444-33]frank